UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ROBERT D. DELEE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12 CV 380 |
| | ) | |
| CITY OF PLYMOUTH, INDIANA., | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the court on cross-motions for summary judgment.[1] Summary judgment is of course to be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When, as in the present case, the facts necessary to make a decision are undisputed, and the issue is purely one of statutory interpretation, summary judgment is especially appropriate. *Adler v. Madigan*, 939 F.2d 476, 478 (7th Cir. 1991).

The issue in this case is whether the City of Plymouth, Indiana (hereinafter, "Plymouth" or "the City"), violated the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4316 (hereinafter, "USERRA") when it reduced or pro-rated[2] a longevity component of plaintiff Robert D. DeLee's (hereinafter , "DeLee") salary. DeLee is Plymouth police officer who, at the times relevant here, had

---

[1] Strictly speaking, plaintiff's motion is one seeking partial summary judgment on the issue of whether a statutory violation occurred, reserving for trial the issue whether that violation, if it occurred, was wilful.

[2] The City refers to what occurred as proration of pay and hotly contends that by calling it a "reduction" in pay plaintiff DeLee has mischaracterized undisputed facts or created a disputed issue. The court does not view these alternative characterizations of DeLee's salary calculation as creating a disputed issue of fact.

been employed in that capacity for 11 previous years. DeLee is also a reserve officer in the United States Air Force, and was called-up for eight month's active-duty deployment from September 1, 2010, to May 11, 2011, occurring during his 12th year of employment by Plymouth. Whether or not the USERRA requires Plymouth to pay him longevity pay for those eight months is the issue in this case.

Plymouth's longevity pay is an amount paid as a lump sum to police officers who have been continuously employed by Plymouth for at least three years, intended to serve as an incentive to remain in that employment. (DE #8-4 at 1.) It is paid annually on the first pay date following the individual's anniversary date of employment in an amount equal to $225 times years of continuous employment. (DE #8-2 at 3; DE #8-3 at 1.) For example, after completing ten years of employment an officer would receive a payment on $2250.00 in his first paycheck in the eleventh year.

At all times that matter here, Plymouth had three relevant ordinances governing longevity pay. First, Ordinance Nos. 2009-1987 and 20010-2009, which in pertinent part provide in identical terms:

> Longevity pay is additional compensation to be paid to a qualified police officer. A qualified police officer is one who has at least three (3) years of continuous service to the City.
>
> Longevity pay is calculated to be Two Hundred Twenty-five Dollars ($225.00). The amount to be paid to a qualified police officer is $225.00 multiplied by the number of years of continuous service. The maximum amount paid shall be $4,500.00. Longevity shall be paid on the pay day following the anniversary date of employment for that individual.**
>
> . . .

2

> **Except for those instances noted in Ordinance No. 1480.

(DE #8-2 at 3; #8-3 at 1.) Then, Ordinance No. 1480, which in pertinent part provides:

> WHEREAS in the interest of fiscal responsibility and fairness it should be recognized that a member of the police department . . . who is in an inactive status but who has reached an anniversary date for purposes of longevity pay should be paid said longevity but as calculated on the number of months of active service to the City . . .
>
> Longevity pay shall be prorated for any qualified policeman or policewoman who during the year immediately preceding their anniversary date is on a leave of absence or who is otherwise not engaged in the active performance of the normal and customary duty of the police department. Longevity pay shall be prorated as based on the number of months of actual active duty during the year immediately preceding the anniversary date.

(DE #8-4 at 1.) Plymouth's Employee Handbook allows for several types of leaves of absence which could last a month or longer. (DE # 8-1 at 4.)

Turning to the federal statute at issue, the purpose of the USERRA is to "encourage[ ] military service by granting service members rights with respect to civilian employment that are not available to similarly situated, nonmilitary employees," as, for example, by § 4316 which grants "a reemployed service member the same seniority benefits that would have accrued had the member 'remained continuously employed.'" *Crews v. City of Mt. Vernon*, 567 F.3d 860, 867 (7th Cir. 2009) (*quoting* 38 U.S.C. § 4316(a)). As relevant to the dispute here, § 4316, which the parties agree preempts any conflicting state law such as Plymouth's ordinances, provides:

3

> (a) A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.
> (b)
>> (1) Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be—
>>> (A) deemed to be on furlough or leave of absence while performing such service; and
>>> (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.
>
>> . . . .
>> (3) A person deemed to be on furlough or leave of absence under this subsection while serving in the uniformed services shall not be entitled under this subsection to any benefits to which the person would not otherwise be entitled if the person had remained continuously employed.

38 U.S.C. § 4316(a),(b).

DeLee's anniversary date of employment falls on April 20, and after that date in 2010 he had eleven years of continuous service. (DE #8-1 at 5, ¶ 12.) He was paid a longevity sum of $2,475.00 (*i.e.*, the product of 11 times $225.00). (*Id.*) In his twelfth year of employment he was on active duty in his capacity as an Air Force Reserve officer for eight months, and received longevity pay in the sum of $900.00, that is, $2700.00

prorated by the number of months of active-duty service as a police officer during the year, four, or 1/3 of the year. (*Id*. at ¶ 13.)[3] After he returned from his deployment and resumed active duty as a Plymouth police officer, he requested that he be paid $1800.00 longevity pay for his period of active duty. Plymouth refused, and the present lawsuit followed.

For the purpose of a providing a simplified context, the court explains the parties' opposing views on as follows. Plaintiff DeLee sees his longevity pay as a benefit "determined by seniority," 38 U.S.C. § 4316(a), and because he is entitled to the "additional seniority . . . benefits that [he] would have attained if [he] had remained continuously employed," (*Id*.), he is entitled to the full amount of his longevity pay. In other words, the $2700 that correlate to 12 years of employment is a seniority benefit that Plymouth cannot reduce. Plymouth, on the other hand, though it pays the longevity pay as an annual lump sum, sees it as "essentially a pay raise of $225.00 for each year a police officer continues to work for Plymouth." (DE #9 at 19.) Plymouth agrees that the years-based calculation which determines the rate of longevity pay is a seniority benefit that USERRA § 4316(a) requires continue the same for a deployed member of the armed services as if he or she had remained continuously employed. However, Plymouth believes that prorating the amount of longevity pay due based on time actually worked is a legitimate means of paying compensation for work actually

---

[3] Plymouth paid him the $900.00 in September, 2010, shortly before he left for active duty, for the 4 months he had already worked since his anniversary date on April 20, 2010.

performed, not a seniority-based benefit, and so allowed by USERRA § 4316(b)(3) as interpreted by applicable precedent.

Plymouth believes the outcome of this case is dictated by *Foster v. Dravo Corp.*, 420 U.S. 92 (1975).[4] In *Foster*, employees were entitled to full vacation benefits only if they worked at least 25 weeks in a year. Foster was deployed for 18 months and failed to meet that requirement in two consecutive years, but when he returned to his job, he argued that he was entitled by the statute to the same vacation benefits he would have received had he remained continuously employed. *Foster*, 420 U.S. at 95. Beginning its analysis by noting that "where the claimed benefit requires more than simple continued status as an employee, the Court has held that it is not protected by the statute," *Id*. at 97, the Court held that Foster's vacation benefits were intended as compensation for work performed, and so not required by the statute to be provided:

> Generally, the presence of a work requirement is strong evidence that the benefit in question was intended as a form of compensation. Of course, as in the *Accardi* case, the work requirement may be so insubstantial that it appears plainly designed to measure time on the payroll rather than hours on the job; in that event, the Act requires that the benefit be granted to returning veterans. But where the work requirement constitutes a bona fide effort to compensate for work actually performed, the fact that it

---

[4] *Foster* involved a predecessor statute to USERRA, the Military Selective Service Act. Like the USERRA, it contained a provision requiring a service member returning to employment to be given the same benefits he/she would have received if continuously employed. *See Foster*, 420 U.S. at 93. Cases interpreting predecessors to USERRA are useful in interpreting it. *Cf. McGuire v. UPS*, 152 F.3d 673, 676 (7th Cir. 1998) (discussing Veterans' Reemployment Rights Act and the USERRA); *see Lapine v. Town of Wellesley*, 970 F. Supp. 55, 59 n.2 (D. Mass. 1997) (explaining how Military Selective Service Act ultimately became the USERRA).

> correlates only loosely with the benefit is not enough to invoke the
> statutory guarantee.

*Id*. at 99-100.

The *Accardi* case involved a claim to severance pay that was based on an employee's years of "compensated" service with the employer. *Accardi v. Pennsylvania R. Co.*, 383 U.S. 225 (1966), In *Accardi* the "Court concluded that the severance payments were not intended as a form of deferred compensation for work done in the past, but rather as a means of compensating employees for the loss of rights and benefits accumulated over a long period of service," and thus the payments were a seniority benefit that could not be reduced. *Foster*, 420 U.S. at 98 (explaining *Accardi*). The Court distinguished Foster's vacation benefit as a bona fide means of providing compensation for work performed, not a benefit earned purely because of seniority, and so the statute did not require the employer to provide it on Foster's return to work from his military duty.

DeLee agrees with Plymouth that *Foster* and *Accardi* are relevant, arguing that his longevity pay is like the severance pay in *Accardi*, and not like the vacation benefit in *Foster*, because:

> Plymouth's longevity pay formula does not vary based on factors such as overtime and short periods of illness. Hence, Plymouth's longevity pay formula is "plainly designed to measure time on the payroll rather than hours on the job." *Id*. [*Foster*] at 99. Additionally, longevity pay is defined in Plymouth's city ordinances as a reward and incentive for lengthy service. The very name "longevity pay" denotes a reward for lengthy service and does not suggest a purpose of short-term compensation for

> work performed. Therefore, Plymouth's longevity pay is a perquisite of seniority within the meaning of the principles enunciated in *Foster*.

(DE #18 at 17.) This analysis completely ignores the existence of Plymouth Ordinance No. 1480, enacted, according to its preamble, "in the interest of fiscal responsibility and fairness," requiring longevity pay to be prorated for any leave of absence from active police duty and paid only for the months actually worked. (DE #8-4.) Thus, while the *rate* (*i.e.*, $225 times years of employment) of Plymouth's longevity pay is plainly a seniority benefit, the amount of Plymouth's longevity pay due to be paid for any given year is clearly intended to be compensation for work actually performed in the preceding year. This makes Plymouth's longevity pay like the vacation benefit in *Foster*, not the severance pay in *Accardi*.

For this reason, and because of the undisputed facts and the clear and unambiguous text of § 4316 of the USERRA, it is not necessary to give lengthy consideration to the additional cases cited by the parties.[5] Subsection (a) of § 4316 required Plymouth to give DeLee the "the additional seniority and rights and benefits

---

[5] Plymouth contends that as in *Gross v. PPG Indus. Inc.*, 636 F.3d 884 (7th Cir. 2011), DeLee is not entitled to have his longevity pay calculated using a formula he finds preferable. *Gross* is inapplicable because it involved a benefit the employer provided only to veterans, voluntarily, and not a benefit applicable to all employees. DeLee argues that his longevity pay is like an unemployment compensation benefit at issue in *Coffy v. Republic Steel Corp.*, 447 U.S. 191 (1980), and the severance pay involved in *Alabama Power Co. v. Davis*, 431 U.S. 581 (1977). Both of those cases, using the principle derived from *Accardi*, found that the "true nature" of the benefit at issue was a reward for longevity, not a form of short-term compensation for work. DeLee argues that the true nature of his longevity pay—as implied by its nomenclature—is a reward for longevity. As explained herein, that is true as to the rate of longevity pay, and DeLee was not deprived of a longevity rate increase based on his seniority. It is not true, however, as to the earning of longevity pay, which Plymouth closely ties, for all police officers, to time actually worked, making it a form of short-term compensation.

that [he] . . . would have attained if [he] . . . had remained continuously employed." 38 U.S.C. § 4316(a). It is undisputed that Plymouth did this by paying DeLee longevity pay at the same rate as if he had 12 years of continuous service.[6] Subsection (b) of § 4316 states that DeLee is "not entitled . . . to any benefits to which [he] . . . would not otherwise be entitled if [he] . . . had remained continuously employed." 38 U.S.C. § 4316(b)(3). It is undisputed that if DeLee had remained continuously employed by Plymouth but taken an eight-month leave for any reason, such as an extended illness, his longevity pay would have been prorated just as it was. Thus, § 4316 of the USERRA does not prohibit Plymouth from making a pro-rata reduction to DeLee's longevity pay for the eight-month period of work he missed while on active duty.

For the reasons above, Plymouth's motion for summary judgment (DE #6) is **GRANTED**; DeLee's motion for partial summary judgment (DE # 17) is **DENIED**. The clerk is to enter final judgment in favor of defendant City of Plymouth, Indiana, stating that plaintiff Robert D. DeLee shall take nothing by way of his complaint.

**SO ORDERED.**

Date: March 31, 2014

       s/ James T. Moody  
       JUDGE JAMES T. MOODY  
       UNITED STATES DISTRICT COURT

---

[6] Thus, DeLee's argument that he "received credit for his time in service for purposes of determining eligibility for longevity pay based on the continuous service requirement but was not credited his time in service when the *amount* of his longevity pay benefit was calculated," (DE # 18 at 11), is simply wrong. His seniority-increased rate produced a greater amount.